UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TITO M. ROOSEVELT,

                          Petitioner,

          -vs-

THOMAS GRIFFIN,

                          Respondent.

**No. 6:15-cv-06738-MAT**
**DECISION AND ORDER**

## I.    Introduction

Tito M. Roosevelt ("Petitioner") filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 ("Section 2254"), alleging that he is being held in Respondent's custody in violation of his constitutional rights. Petitioner is currently serving an aggregate prison term of 16 years to life, pursuant to a judgment entered on March 18, 2013, in New York State, Erie County Court (Pietruszka, J.), following a jury verdict convicting him of second-degree criminal possession of a weapon (N.Y. Penal Law § 265.03(3)), second-degree forgery (Id., § 170.10(2)), and false personation (Id., § 190.23). For the reasons discussed herein, the request for a writ of habeas corpus is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

Under Erie County Indictment No. 02702-2011, Petitioner was charged with second-degree criminal possession of a weapon, second-degree forgery, and false personation. These charges arose from

allegations that on December 3, 2011, while at a store in the City of Buffalo, Petitioner possessed an operable, loaded .38-caliber revolver, which he deposited into a box of bottled water when he saw police officers approaching him. He then was detained while leaving the store and, when asked for his pedigree information, gave the police a false name, "Samuel Gamblin." While being booked at the Erie County jail, Petitioner signed his name as "Samuel Gamblin."

On March 2, 2012, while detained at the jail awaiting trial on Indictment No. 02702-2011, Petitioner was charged under Erie County Indictment No. 00264-2012 with first-degree promoting prison contraband (N.Y. Penal Law § 205.25(2)) and seventh-degree criminal possession of a controlled substance (Id., § 220.03). These charges arose from allegations that on December 29, 2011, Petitioner unlawfully possessed cocaine while incarcerated at the jail.

In connection with Indictment No. 02702-2011, a suppression hearing was held on June 12, 2012 in Erie County Court (Pietruszka, J.). Plaintiff's statements to the police after being stopped outside the store were held to be the product of a detention based on reasonable suspicion and therefore admissible. Petitioner's jury trial commenced on December 4, 2012, before Judge Pietruszka. On December 10, 2012, the jury returned a verdict of guilty on all charges in the indictment.

In connection with Indictment No. 00264-2012, Petitioner entered a guilty plea on January 4, 2013, before Judge Pietruszka, to first-degree promoting prison contraband in full satisfaction of the indictment. During his plea allocution, Petitioner was advised that his sentence would run concurrently with the as-yet unimposed sentence under Indictment No. 02702-2011, and that if his sentence under Indictment No. 02702-2011 were to be subsequently modified it "will have no effect on this [indictment]." After discussing this proposition with trial counsel, Petitioner affirmed that he understood. Judge Pietruszka imposed an indeterminate sentence of 2 to 4 years' imprisonment, to run concurrently with the sentences under Indictment No. 02702-2011.

On March 18, 2013, Petitioner was sentenced on the convictions pertaining to Indictment No. 02702-2011 as a persistent violent felony offender to concurrent prison terms of 16 years to life on the weapons-possession conviction, 2 to 4 years on the forgery conviction, and 90 days on the false personation conviction.

Represented by new counsel, Petitioner pursued a direct appeal of his conviction under Indictment No. 02702-2011. On February 6, 2015, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the judgment. People v. Roosevelt, 125 A.D.3d 1452, 1453 (4th Dep't 2015). The New York Court of Appeals denied leave to appeal. People v. Roosevelt, 25 N.Y.3d 1076 (2015). Petitioner also appealed his conviction

under Indictment No. 00264-2012. In the same February 6, 2015 order, the Appellate Division held that there is was basis to grant his request to reverse the judgment and vacate his plea of guilty, in light of its affirmance of the convictions under Indictment No. 02702-2011. Roosevelt, 125 A.D.3d at 1455 (citation omitted).

On December 8, 2015, Petitioner filed the instant habeas petition, in which he asserts the same grounds for relief raised on direct appeal. All of Petitioner's claims were "adjudicated on the merits" by the Appellate Division, and therefore he may obtain habeas relief  only if he can demonstrate that the Appellate Division's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).

## III. Merits of the Petition

### A.   Erroneous Denial of Motion to Suppress Statements Based on Illegality of Police Conduct  (Petitioner's Ground I)

#### 1.   Overview

Petitioner reasserts his claim that his motion to suppress physical evidence and his statement to the police was improperly denied. Specifically, he claims that he was unlawfully seized, and that the physical evidence, as well as his statement to the police, were the fruits of that seizure. At a suppression hearing held on

June 12, 2012, the police officer who initiated the interaction with Petitioner, and the police officer who detained him outside the store, both testified. In a decision dated August 14, 2012, the trial court denied the motion to suppress, finding that (1) the officers' approach of Petitioner "did not constitute a seizure, but was merely an exercise of the officers' right to request information pursuant to level 1 of [People v.] DeBour[, 40 N.Y.2d 210 (1976)]"; (2) Petitioner abandoned the weapon; and (3) Petitioner's admission followed Miranda warnings and was given voluntarily.

On direct appeal, the Appellate Division agreed with Petitioner "that the police unlawfully detained him outside the store while they searched inside for contraband, inasmuch as, at that time, there did not exist reasonable suspicion to believe that he was committing, had committed or was about to commit a crime[.]" Roosevelt, 125 A.D.3d at 1453 (citations omitted). However, the Appellate Division concluded, "any error in failing to suppress [Petitioner]'s statements is harmless inasmuch as the proof of guilt is overwhelming and there is no reasonable possibility that the jury would have acquitted defendant if his statements had been suppressed[.]" Id.

### 2. Legal Principles

This claim must be assessed by reference to the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976), which

states that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494-95 (footnotes omitted). Interpreting Stone v. Powell, the Second Circuit concluded that federal habeas review of Fourth Amendment violations may be available where "the state provides no corrective procedures at all[,]" or "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process[.]" Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977), cert. denied, 434 U.S. 1038 (1978).

### 3. Application

Through counsel, Petitioner litigated his Fourth Amendment claim at the pretrial suppression hearing and on direct appeal. Both the trial court and the Appellate Division issued written opinions regarding his Fourth Amendment claim. Thus, New York State's corrective process not only was available to Petitioner, but was actually utilized by him. See, e.g., Blagrove v. Mantello, No. 95-2821, 104 F.3d 350, 1996 WL 537921, at *2 (2d Cir. Sept. 24, 1996) (unpublished opn.) (where petitioner's "Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in [his] pro se brief"

-6-

petitioner's "Fourth Amendment argument is barred [from federal habeas review] because the issue was fully and fairly litigated in the state courts"). Petitioner makes no allegation that an "unconscionable breakdown" occurred in New York's corrective process, and none is apparent on the record before the Court. "[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan v. Riley, 975 F.2d 67, 72 (2d Cir. 1992). Petitioner's Fourth Amendment claim therefore is dismissed as barred by the doctrine of Stone v. Powell. See Capellan, 975 F.2d at 72.

**B. Legal Insufficiency of the Evidence (Petitioner's Ground II)**

### 1. Overview

Petitioner argues that the evidence adduced by the prosecution was not legally sufficient to prove beyond a reasonable doubt that he both possessed the firearm found at the scene, and that it was operable at the time. Accordingly, Petitioner contends that his conviction for second-degree criminal possession of a weapon violates due process. On direct appeal, the Appellate Division held that, "viewing the evidence in the light most favorable to the People, . . . there is a valid line of reasoning and permissible inferences that could lead a rational person to conclude that [he] possessed a loaded and operable firearm[.]" Roosevelt, 125 A.D.3d at 1454 (internal and other citations omitted).

## 2. Legal Principles

For a habeas court assessing the legal sufficiency of the evidence supporting a petitioner's conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Where, as here, the state court has adjudicated the merits of a petitioner's legal insufficiency claim, an additional layer of deference is due. Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam). That is, a court may not grant habeas relief unless the state court applied the Jackson standard in an "objectively unreasonable" manner. Cavazos v. Smith, 132 S. Ct. 2, 7 (2011) (per curiam) (reversing circuit court's decision granting habeas petition in light of finding that it was reasonable for state court to determine that jury's verdict was rational; circuit court had improperly re-weighed evidence and credibility of witnesses) (citing 28 U.S.C. 2254(d)(1)).

### 3. Application

"In considering a petition for a writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime." Green v. Abrams, 984 F.2d 41, 44–45 (2d Cir. 1993). To sustain a conviction of criminal possession of a weapon in the second degree under N.Y. Penal Law § 265.03(3), "the People were obligated to establish, beyond a reasonable doubt, that the defendant knowingly possessed a loaded firearm outside his home or place of business." People v. Joyner, 126 A.D.3d 1002, 1006 (2d Dep't 2015) (citing N.Y. Penal Law § 265.03(3) (eff. Dec. 15, 2006)). "Knowing possession of tangible property may in the appropriate circumstances be inferred from evidence showing that the defendant had the property in his physical possession, or that he exercised dominion or control over the property by a sufficient level of control over the area in which the property is found or over the person from whom the property is seized[.]" People v. Muhammad, 16 N.Y.3d 184, 188 (2011) (internal quotation marks and brackets omitted).

Viewing the evidence in the light most favorable to the prosecution, see Jackson, 443 U.S. at 319, the proof at trial established the following. On December 3, 2011, Buffalo Police Department Officers Mark Hamilton and Mike Acquino were in an unmarked car patrolling the area around Genesee Street and May

Street, a known high-crime area. As they drove by the Corner Store at 1733 Genesee Street, they saw Petitioner standing inside the doorway, looking from side to side. Officer Hamilton rolled down his window and made eye contact with Petitioner, whose eyes "got wide." (T.292-93).[1] Petitioner then walked away from the officers, towards the back of the store. By the time Officers Hamilton and Acquino reached the door to the store, Petitioner was already walking out. When they asked him for his name, he replied, "Samuel Gamblin." (T.294). Officer Hamilton went to the rear of the store while Officer Acquino stayed with Petitioner. After looking around for a few minutes, Officer Hamilton found a .38-caliber revolver containing four live rounds of ammunition in a cardboard box filled with gallon jugs of water. (T.296). The only object in that box, other than the jugs of water, was the revolver. The two officers then reviewed the in-store surveillance camera footage which revealed Petitioner purposefully secreting a gun-like object in a box. (T.297). Officer Hamilton gave the revolver to Officer Jared Domaracki to submit for ballistics testing. Petitioner was arrested and brought to the police station. After waiving his rights, Petitioner told Officer Hamilton that he had gotten the gun from a field, and that the gun was in his hand when the officer was walking into the store. (T.321-22). Petitioner stated that he was planning to shoot an individual named Laron Williams whom he

---

[1]

Citations in parentheses to "T." refer to pages from the trial transcript.

believed had shot his brother. Laron Williams could be seen on the store's surveillance camera footage. (T.322-23). The revolver was test fired at the CPS Laboratory using submitted ammunition. The ballistics examiner re-inserted the screw as a cylinder pin (which had been removed by Officer Hamilton prior to sending it for testing), and was able to fire the weapon in single action but not in not double action. (T.469-84). A genetic profile was developed based on a buccal swab taken from Petitioner. The revolver was swabbed for DNA, and testing of the swab from the revolver revealed the presence of a mixture of at least three genetic profiles. (T.521). Two reports, using different statistical methods, were generated comparing Petitioner's genetic profile to the mixture found on the gun. (T.516-17). Neither report excluded Petitioner as a contributor to the genetic material found on the weapon. (T.521-22).

In support of his legal insufficiency claim, Petitioner argues that the surveillance camera footage does not exclude "to a moral certainty" every hypothesis but guilt, that the ballistics examiner was able to fire the weapon at the laboratory was not sufficient to show that the gun was operable at the time it was allegedly possessed, and that the forensic expert admitted that just because a person cannot be excluded as the source of DNA does not mean that he ever touched the object in question. As an initial matter, because the prosecution's case was not based solely on

circumstantial evidence, the "moral certainty" language standard did not apply. See People v. Barnes, 50 N.Y.2d 375, 379-80 (1980) (rejecting defendant's contention that "the sufficiency of the evidence pertaining to the element of intent must be measured by the so-called 'moral certainty' standard"; that standard does not apply where "both direct and circumstantial evidence are employed to demonstrate a defendant's culpability"). Next, operability is not an element of N.Y. Penal Law § 265.03(3); rather, the prosecution needed only to prove the gun was loaded and that Petitioner possessed it. See Joyner, 126 A.D.3d at 1006 (citing N.Y. Penal Law § 265.03(3) (eff. Dec. 15, 2006)). Finally, Petitioner's attacks on the probative value of the DNA evidence cannot be reviewed by this Court on habeas review; it was within the province of the jury to evaluate the DNA evidence and determine the proper weight it should be accorded. Likewise, the jury was entitled to credit the police officers' testimony about their observations of Petitioner during the incident, along with the video surveillance camera footage depicting Petitioner dropping a gun-like object into a box, in which the police found the loaded gun minutes later. Although it cannot be discerned from the surveillance video that the object Petitioner placed into the box was a gun—Petitioner suggested on appeal that it could have been a cell phone—"the box contained no objects other than the gun and the jugs of water." Roosevelt, 125 A.D.3d at 1454. Even without

-12-

Petitioner's statements to the police admitting to possessing the gun, there was a reasonable chain of inferences that could lead a rational jury to the conclusion that Petitioner "had the property in his physical possession," and therefore "knowing[ly] possess[ed]" it. Muhammad, 16 N.Y.3d at 188. Therefore, the Appellate Division's application of the Jackson standard was not erroneous, let alone objectively unreasonable.

### C. Verdict Against the Weight of the Evidence (Petitioner's Ground II)

Petitioner contends, as he did on direct appeal, that the verdict was against the "weight of the evidence" under People v. Bleakley, 69 N.Y.2d 490, 495 (1987). The Appellate Division rejected this contention as without merit. Roosevelt, 125 A.D.3d at 1454 (citation omitted).

"A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law [("CPL")] § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." Correa v. Duncan, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) (citing Jackson, 443 U.S. at 318-19; Bleakley, 69 N.Y.2d at 495 (CPL § 470.15(5) permits intermediate appellate courts in New York to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony"). However, federal habeas corpus review is permitted only where the applicant has alleged that he is in state custody in violation of "the [United States] Constitution

-13-

or a federal law or treaty." 28 U.S.C. § 2254(a). Petitioner's claim attacking the weight of the evidence supporting his second-degree criminal possession of a weapon conviction must be dismissed because it does not raise a federal constitutional issue cognizable in this habeas proceeding. E.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255 (1923); accord, e.g., Moye v. Corcoran, 668 F. Supp.2d 523, 539–40 (W.D.N.Y. 2009) (collecting cases).

### D. Prosecutorial Misconduct

#### 1. Overview

Petitioner asserts that prosecutor committed misconduct by (1) misrepresenting both the DNA evidence and whether the gun was an item of trial evidence, (2) attempting to shift the prosecution's burden of proof as to the count of false personation, (3) improperly appealing to the jury's sympathy by means of safe streets" arguments, and (4) unfairly characterizing the defense's arguments as "smoke and mirrors." The Fourth Department summarily rejected this claim. Roosevelt, 125 A.D.3d at 1454–55 (finding that "none" of "defendant's remaining contentions [which included his prosecutorial misconduct claim] . . . require reversal or modification of the judgment").

###    2.    Legal Principles

The Second Circuit has identified the following principles to be the "clearly established" law governing prosecutorial misconduct claims, for purposes of Section 2254(d)(1): "First, on federal habeas review, the relevant standard is '"the narrow one of due process, and not the broad exercise of supervisory power."'" Jackson v. Conway, 763 F.3d 115, 146 (2d Cir. 2014) (quoting Darden Wainwright, 477 U.S. 168, 180 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). "Thus, while the State has a 'duty to refrain from improper methods calculated to produce a wrongful conviction,'" Jackson, 763 F.3d at 146 (quoting Berger v. United States, 295 U.S. 78, 88 (1935)), "such methods will warrant habeas relief only if they '"so infected the trial with unfairness as to make the resulting conviction a denial of due process,"'" id. (quoting Darden, 477 U.S. at 180 (quoting DeChristoforo, 416 U.S. at 643)). "The habeas court must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." Jackson, 763 F.3d at 146 (citing United States v. Young, 470 U.S. 1, 16–17 (1985); Darden, 477 U.S. at 182 (applying Young); DeChristoforo, 416 U.S. at 647–48 (distinguishing between "ordinary trial error of a prosecutor" and the type of

"egregious misconduct . . . [that] amount[s] to the denial of constitutional due process").

### 3. Application

"Unlike a direct appeal from a conviction, [the habeas court applying 28 U.S.C. § 2254(d)] need not decide conclusively whether these statements [by the prosecutor] were improper." Jackson, 763 F.3d at 149 (2d Cir. 2014). Rather, "it is sufficient that [the habeas court] hold fairminded jurists could disagree as to the correctness of the [Appellate Division] conclusion[,]" id., that the prosecutor's comments during summation that the statements did not require reversal or modification of the judgment. On this record, Petitioner has not demonstrated that Appellate Division's decision "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Parker, 132 S. Ct. at 2155 (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)). Indeed, in Darden, the Supreme Court held that a closing argument that was exponentially more inflammatory than the one at issue here did not warrant habeas relief. See Darden, 477 U.S. at 180, n. 11 (prosecutor referred to the defendant as an "'animal'"); id. at 180, n. 12 (prosecutor said, "'I wish I could see [the defendant] with no face, blown away by a shotgun'"); see also Jackson, 763 F.3d at 148 (finding the prosecutor did not correct the judge's understanding about whether an expert was an examining

witness; this was "an attempt to obtain an unfair advantage at trial and, like the magistrate judge, we find the prosecutor's "lack of professional candor . . . inexcusable;" "[n]evertheless, our task is not to determine whether this behavior was inappropriate, unethical, or even erroneous").

### D. Racial Discrimination During Jury Selection (Petitioner's Ground Four)

#### 1. Overview

Petitioner contends that during voir dire, the prosecutor used a peremptory challenge to dismiss the only black juror from the jury pool and that her proffered race-neutral explanation was insufficient to rebut his prima facie case of racial discrimination.

#### 2. Legal Principles

In Batson v. Kentucky, 476 U.S. 79 (1986), "the Supreme Court held that racial discrimination in jury selection in state courts violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution." Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009) (citing Batson, 476 U.S. at 85-87). A Batson claim is evaluated using a three-step process:

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide

> . . . whether the opponent of the strike has proved
> purposeful racial discrimination.

Johnson v. California, 545 U.S. 162, 168 (2005) (internal

quotations, citations, and alteration omitted).

### 3. Application

During jury selection, the prosecutor exercised a peremptory

challenge against a prospective juror six, who was black.

(T.160-62). Trial counsel objected, and the prosecutor countered

that the defense had not established a pattern of purposeful,

race-based exclusion. (T.161-62). Trial counsel pointed out that

juror six was personally acquainted with both police officers and

defense lawyers, that he stated harbored no hostility toward anyone

for his disorderly conduct arrest, and that he stated he could be

fair and impartial. (T.162). The prosecutor argued that counsel had

not established a prima facie case under Batson but proceeded to

offer her race neutral reasons for striking juror six, namely, that

he had been arrested for disorderly conduct, and "he felt he was

not treated fairly throughout the process." (T.162). The prosecutor

noted that she also had dismissed juror three, a non-minority,

because juror three felt that she was not treated fairly when

charged with forgery. (T.162). Trial counsel made no argument

suggesting that the prosecutor's reasons were pretextual. The trial

court permitted the challenge.

On direct appeal, appellate counsel argued that the prosecutor

mischaracterized juror six's responses, noting that when asked

whether he was treated fairly, juror six replied "it could have been done better, but it is what it is." (T.138). The prosecutor then asked him whether he harbored any resentment and he replied, "no." (T.138). She then asked him again about his feelings toward the prosecution and he replied, "I don't feel any type of way." In contrast, appellate counsel argued, juror three (who also was dismissed by the prosecutor) stated, "I do have some residual anger" about "[b]eing treated unfairly" during her prosecution for forgery. Appellate counsel argued that the differences in the prospective jurors' responses about how they felt about the prosecution demonstrated that the prosecutor's reasons for striking juror six were pretextual.

The Court assumes, without deciding, that Petitioner established a prima facie case sufficient to shift the burden to the prosecutor to provide racially neutral explanations for the peremptory strike. See, e.g., Hernandez v. New York, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). At the second step of the Batson inquiry, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

<u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995). Here, the prosecutor's proffered reasons were facially race-neutral, and Petitioner has not contended otherwise.

Petitioner's argument for finding pretext at step three of <u>Batson</u> is based mainly on the prosecutor's purported failure to apply its proffered race-neutral reasons for excusing juror six to similarly-situated prospective jurors of other races or ethnicities. "Such inconsistency can demonstrate a discriminatory intent." <u>United States v. Farhane</u>, 634 F.3d 127, 155 (2d Cir. 2011) (citing <u>Miller-El v. Dretke</u>, 545 U.S. 231, 241 (2005) (observing that "[m]ore powerful than . . . bare statistics" in evidencing pretext for discrimination "are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve"); other citation omitted). However, in this case, the prosecutor did not retain the similarly-situated, non-minority juror, juror number three; the prosecutor also exercised a peremptory challenge as to her, as noted above. Thus, there was no inconsistency of the type described in <u>Farhane</u> and <u>Miller-El</u>. To the extent that Petitioner asserts that the prosecutor misrepresented juror six's responses, the Court notes that the prosecutor excused him because, as she stated, he "felt he was not treated fairly" during his criminal proceeding. During voir dire, when asked whether he was treated fairly, juror six replied, "it could have been done better, but it is what it is." (T.138). Thus,

while juror six's response about the fairness of his prior treatment by the criminal justice system was phrased more equivocally than the prosecutor's summary of his response during the Batson inquiry, juror six did not affirmatively agree that he *was* treated fairly. Petitioner thus has not established that there was a material misrepresentation by the prosecutor.

The Court notes that even prior to the amendments to 28 U.S.C. § 2254, the Supreme Court emphasized the deference to be accorded to the trial judge's determination at Batson's third step: "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson, 476 U.S. at 98 n. 21. The statutory overlay of 28 U.S.C. § 2254(d)(1) requires additional deference: "The only question . . . is whether the trial court's factual determination at Batson's third step was unreasonable." Rice v. Collins, 546 U.S. 333, 342 (2006). "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Id. at 338-39 (quoting 28 U.S.C. § 2254(e)(1)).

Notably, trial counsel did not challenge the prosecutor's proffered reasons as pretextual. As the Supreme Court has reiterated, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the

strike." Purkett v. Elem, 514 U.S. at 768.[2] In this Court's view, the record "does not . . . compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications and conclude [Petitioner] had shown a Batson violation." Rice, 546 U.S. at 341. Therefore, the Court concludes that the Appellate Division's summary rejection of Petitioner's Batson claim was not an unreasonable application of, or contrary to, clearly established federal law.

### E.   Vacatur of Guilty Plea Under Indictment No. 00264-2012 (Petitioner's Ground Five)

Petitioner argues, as he did on direct appeal, that in the event his conviction under Indictment No. 02702-2011 is reversed, his guilty plea under Indictment No. 00264-2012 should be vacated. See People v. Pichardo, 1 N.Y.3d 126, 129 (2003) ("[W]hen a guilty plea is induced by the court's explicit promise that the defendant will receive a lesser sentence to run concurrently with a sentence in another case, and that conviction is overturned, the defendant may withdraw his plea and face the indictment, since the promise cannot be kept[.]"). Here, the first conviction remains intact, and thus the condition precedent for Petitioner's Pichardo claim has not occurred. Furthermore, a Pichardo claim is solely a matter of

---

[2]   See also People v. Allen, 86 N.Y.2d 101 (1995). There, "the New York Court of Appeals held that the 'ultimate burden of proof [of a party claiming a violation of Batson is] not satisfied' if he 'raise[s] no claim of pretext' after the adverse party proffers a race-neutral reason for the relevant strike at step two of the Batson inquiry.'" Messiah v. Duncan, 435 F.3d 186, 195-96 (2d Cir. 2006) (quoting Allen, 86 N.Y.2d 111; alterations in original).

New York State law and, as such, cannot form a basis for federal habeas relief. <u>See</u>, <u>e.g.</u>, <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (holding that federal habeas corpus review not available to remedy alleged error of state law).

**IV.  Conclusion**

For the reasons discussed above, the application for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    March 27, 2018
          Rochester, New York